## MORAMERICA MORTGAGE COMPANY,
### Plaintiff-Appellant,

v.

## HOME SAVINGS ASSOCIATION OF KANSAS CITY,
### Defendant-Respondent.

### No. WD 33353.

Missouri Court of Appeals, Western District.

July 5, 1983.

Herbert Horowitz, Justin J. Johl, Horowitz & Shurin, P.C., Kansas City, for plaintiff-appellant.

Frank P. Sebree, Richard D. Woods, J. Scott McCandless, Shook, Hardy & Bacon, Kansas City, for defendant-respondent.

Before TURNAGE, P.J., and MANFORD and KENNEDY, JJ.

TURNAGE, Presiding Judge.

MorAmerica Mortgage Company filed suit against Home Savings Association of Kansas City, Missouri, to recover possession of the personal property located in the Ramada Inn in Belton, Missouri, or to recover damages for the taking and detention of that property. The case was tried to a jury, but at the conclusion of all the evidence the court directed a verdict in favor of Home Savings.

On this appeal, MorAmerica contends that the court erred in directing a verdict because the MorAmerica lien was superior to the Home Savings lien. Affirmed.

On July 26, 1973, Bryan Investment Company executed a promissory note secured by a deed of trust on real estate on which the Ramada Inn was located. This note was later assigned to Home Savings Association. In August of 1973, a financing statement

indicating a security interest in Home Savings was filed with the Cass County recorder and with the secretary of state covering personal property located in the Ramada Inn. No security agreement was ever executed covering the personal property.

In January of 1974, MorAmerica made a loan of $150,000 to the Bryan Investment Company on the basis that its security interest would be junior to Home Savings' security interest on both the real estate and the personal property. In the same month, MorAmerica filed a financing statement and, in addition, filed a security agreement describing the personal property. The MorAmerica loan was evidenced by a promissory note and deed of trust subject to the Home Savings loan.

In the latter part of 1974, the Ramada Inn operation experienced financial difficulties, and Home Savings scheduled a foreclosure sale on the real property for February of 1975. Home Savings was the successful bidder at the foreclosure sale and on March 17, 1975, it took possession of both the real and personal property located at the Ramada Inn. The possession of the personal property was taken with the consent of Bryan Investment Company and with the knowledge of MorAmerica. It was not until July of 1976, that MorAmerica made any complaint or demand regarding the personal property. This lawsuit followed.

This appeal relates solely to a question of law. That question is whether or not the failure of Home Savings to make its security interest enforceable until after MorAmerica acquired a security interest in the personal property gave MorAmerica a superior security interest to Home Savings' interest.

MorAmerica concedes that Home Savings' security interest in the personal property attached under UCC § 9–204(1)[1] when Home Savings paid the loan proceeds to Bryan Investment on September 26, 1973. MorAmerica also concedes that Home Savings perfected its security interest under UCC § 9–303(1) when the financing statements were filed with the recorder and secretary of state. However, MorAmerica contends that Home Savings' security interest did not become enforceable under UCC § 9–203 until March of 1975, when Home Savings took possession of the personal property. MorAmerica contends that because its security interest attached, was perfected, and became enforceable in January of 1974, it has priority over Home Savings as to the personal property.

MorAmerica's argument centers primarily on its assertion that the financing statement which Home Savings acquired was not a security agreement as provided in UCC § 9–203(1)(b). Home Savings contends that even if the financing statement did not constitute a security agreement, it nevertheless acquired priority because the security interest of both parties was acquired by filing, and under UCC § 9–312(5)(a), the order of filing determines priority. Home Savings contends that because its financing statement was filed first, it thereby acquired priority.

■ In determining the propriety of directing a verdict at the close of all the evidence, this court must view the evidence in a light most favorable to MorAmerica and give it the benefit of all reasonable inferences to be drawn from the evidence which do not conflict with its theory. *Vinyard v. Missouri Pacific Railroad,* 632 S.W.2d 272, 274[2] (Mo.App.1982).

■ MorAmerica's argument that it has priority in the personal property is based totally on the fact that its security interest became enforceable before Home Savings' security interest became enforceable. The provisions of UCC § 9–312(5)(a) fully answer MorAmerica's contentions. That section provides that priority between conflicting security interests in collateral should be determined by the order of filing if both are perfected by filing, regardless of which security interest attached first.

1. Missouri has adopted the Uniform Commercial Code, and the corresponding statutory sections are found in Chapter 400, RSMo 1978.

For simplicity's sake, all citations in this case will be to the UCC section rather than to the Missouri statute.

That provision was construed in a similar factual situation in *First National Bank and Trust Company of Vinita, Oklahoma v. Atlas Credit Corporation,* 417 F.2d 1081 (10th Cir.1969). In that case, the bank made a loan and filed a financing statement in 1963, but failed to obtain a security agreement until 1965. In 1964 a second creditor acquired a security interest in the same collateral, filed a financing statement, and obtained a security agreement. The court held that under UCC § 9–312(5)(a), the bank acquired priority because it was the first to file. The court noted that the second creditor was placed on notice by the financing statement in favor of the bank, and could have taken steps to protect its interest. Thus, although the bank's security interest was not enforceable until 1965, because it had not obtained a security agreement until that time, the priority was determined by the date that the financing statement was filed in 1963.

The court reached a similar result in *Thorp Commercial Corporation v. Northgate Industries, Inc.,* 654 F.2d 1245 (8th Cir.1981). The *Thorp* court stated that "as between two creditors with security interest in the accounts receivable of the same debtor, the first to provide notice by filing a financial statement has priority." *Id.* at 1249[4].

█ MorAmerica would have priority determined on the basis of which security interest first became enforceable. However, as demonstrated above, the code does not determine priority on the basis of enforceability, but rather on the basis of priority in filing.[2] Home Savings' security interest became enforceable when it took possession of the personal property under UCC § 9–203(1)(a). Thus, when its interest became enforceable, it was entitled to priority because its financing statement was filed first. The trial court correctly decided the question of law, and because there were no controverted facts, properly directed a verdict in favor of Home Savings.

MorAmerica raises two other points which are unsupportable in light of the above discussion. It also questions an evidentiary ruling concerning the value of the personal property. However, because Home Savings had a prior security interest in the property and MorAmerica was not entitled to recover, the value of the personal property is immaterial.

The judgment is affirmed.

All concur.

2. In 1972 UCC § 9–203 was amended to cure the former anomaly that a security interest could attach and be perfected and yet be unenforceable because of a lack of a written security agreement. However, Missouri has not adopted that amendment.